JOSEPH HUMPHREYS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. When upon a review of the evidence and the entire record of the trial of the case, there is no material error which could have produced a different result, a new trial will not be granted, especially where the verdict is sustained by the evidence.
2. The law of insanity, as laid down in Choice *vs.* The State, 31st Georgia Reports, pages 472, 475, 477 and 478, affirmed. (R.)
3. The verdict was not set aside, though there was an error in the charge of the Court. (R.)

Criminal Law. Insanity. Before Judge PARROTT. Bartow Superior Court. March Adjourned Term, 1871.

Joseph Humphreys was indicted for murdering William Humphreys, in June, 1871, by shooting him with a gun. The evidence for the State showed the following facts: Joseph Humphreys married the daughter of one Burgess, and by her had said William Humphreys. They were poor and lived all in one room of a house. About fifty yards from this house lived Mr. Kitchens, and near by another family. In the last mentioned family was a sick child, and for a week before the killing Mrs. Humphreys and Kitchens had been sitting up with this child, but not sitting up together. Kitchens frequently visited at Burgess' but never stayed all night till on the night of the killing. On that night Burgess and his wife, Kitchens, Mrs. Humphreys and William, then eleven years old, all slept on the floor of said room. Burgess was near the window, Kitchens under the table, and Mrs. Humphreys next to the wall, on the opposite side from Burgess, and about eight feet from Kitchens, and at her feet was William. Where Joseph Humphreys was during the

night does not appear.   He saw a man standing in the door of the house the evening before, and the man ran up as if he would shoot him, but upon seeing who it was, ran away. About daylight Mrs. Burgess got up and threw open the window to throw out some water.   Burgess was awake, the others asleep.   Joseph Humphreys, as the window was thrown open, poked an army musket in and shot it; the load lodged in the back of William, who cried out that his father had shot his back all to pieces.   Joseph dropped that gun and picked up another, and fired it into the room, but did not hit any one with it.   The window was about waist high.   Kitchens was so soundly asleep that the firing did not wake him. Joseph ran and was caught.   His son, William, died in about three hours.   It was also shown that about six months before this, Humphreys had said his wife was unfaithful to him, and that Mrs. Burgess was encouraging her in it, and that he would kill them all, and that he did try to kill her with a knife and an axe.

The defense undertook to show that he was insane from jealousy of his wife.   Several witness testified that he was very weak minded, and had no education; one said he thought him crazy, and several said he had not as much sense as most boys of ten years of age have.   They also testified that he had frequently charged his wife with infidelity to him, detailed to them circumstances of suspicion which led him to believe that she had been improperly intimate with one Jones, where he, Humphreys, formerly lived, and certain circumstances which made him conclude that she was unfaithful to him yet.   But there was no evidence of any improper conduct on her part.

In rebuttal, many witnesses who had known Humphreys for many years, testified that while he was not bright, he could attend to ordinary work intelligently, and they believed him to be sound in mind, at least sufficiently so to know right from wrong.   Among these was a physician, who examined him in jail and pronounced him sane.

In charging the jury the Court read from Choice *vs*. The State, 31 Georgia Reports, page 472, as follows: "These are the rules for determining the question of insanity, and the degree and nature of irresponsibility to the law.   The law presumes every man of sound mind till the contrary appears.  The burden of proof is on the defendant, that, at the time, of the commission of the act, he was not of sound mind, and it ought to be made to appear to a reasonable certainty to your satisfaction, that at the time of the commission of the act, the party did not know the nature and quality of the act, or if he did, did not know that the act was wrong; and it devolves upon you to decide whether the defendant has, by proof, rebutted this legal presumption of sanity.  If, after mature deliberation, you are satisfied beyond a doubt that the prisoner is guilty, you will find him so; if not, you will find him not guilty."

Reading from the same case from pages 475, 477 and 478, he further charged as follows: " If a man has capacity and reason sufficient to enable him to distinguish right and wrong as to the particular act in question ; if he has knowledge and consciousness that the act he is doing is wrong, and will deserve punishment, he is, in the eye of the law, of sound mind and memory, and therefore criminally responsible for his acts."

Question 1.  What is the law respecting alleged crimes committed by persons afflicted with insane delusions with reference to one or more particular subjects or persons ; as for instance, when at the time of the commission of the alleged crime, the accused knew he was acting contrary to law, but did the act complained of with the view and under the influence of some insane delusion of redressing or avenging some supposed grevance or injury, or of procuring some supposed public benefit?

Answer. The opinion of the Judges was, that notwithstanding the party committed a wrong act while laboring under the idea that he was redresing a supposed grievance or injury,

or under the impression of obtaining some private or public benefit, he was liable to punishment.

Question 2. What are the proper questions to be submitted to the jury, when a person alleged to be afflicted with insane delusions respecting one or more particular subjects or persons, is charged with the commission of a crime, murder for example, and insanity is set up as a defense?

Answer. Before a plea of insanity should be allowed undoubted evidence ought to be adduced that the accused was of diseased mind, and that at the time he committed the act he was not conscious of right and wrong. Every person was supposed to know what the law was, and therefore nothing could justify a wrong act except it was clearly proved that the party did not know right from wrong.

Question 3. If a person under an insane delusion as to existing facts, commits an offense in consequence thereof, is he thereby excused?

Answer. If the delusion was only partial, the party accused was equally liable with a person of sound mind. If the accused killed another in self-defense he would be entitled to an aquittal; but if the crime were committed for any supposed injury he would be liable to the punishment awarded by the laws to crimes.

The Court also read to the jury section 4259 of the Revised Code, as to voluntary manslaughter and said: "Does the evidence show that there was some actual assault upon Joseph Humphries, or an attempt by William Humphries, the person killed, to commit a serious personal injury upon the person of Joseph Humphries, or did he commit any other offense or do any act equivalent to an assault, to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied?"

The jury found the prisoner guilty. His counsel moved for a new trial because the verdict was against the weight of the evidence, etc., and because the Court erred in each section

of said charge. The Court refused a new trial and that is assigned as error.

W. H. DABNEY; R. W. MURPHY; J. C. BRONSON, for plaintiff in error.

C. E. BROYLES; Solicitor General, by I. E. SHUMATE, for the State.

WARNER, Chief Justice.

The defendant was indicted for the crime of murder, and found guilty by the jury. A motion was made for a new trial, which was overruled by the Court, and the defendant excepted. There was no error in the charge of the Court in relation to the insanity of the defendant, according to the repeated rulings of this Court. In our judgment, the weight of the evidence contained in the record was in favor of the sanity of the defendant.

Although there may have been error in the charge of the Court as to the assault of the deceased upon the defendant (there being no evidence of any such assault), still, that error would not be sufficient to set aside the verdict in view of the facts of the case. The theory of the defendant's counsel is, that the defendant was jealous of his wife, and, knowing that Kitchens was in the house of his father-in-law where his wife was staying, intended to shoot him, and by mistake, shot his son, and was therefore guilty of manslaughter only; that he acted from a sudden impulse of passion, arising from jealousy of his wife. There is no evidence of any improper intimacy between Kitchens and the defendant's wife at any time, which would authorize the defendant to be jealous of him. The family were all sleeping on the floor in the only room of the house (being poor people), when the defendant, about day-light, pointed his gun through the window and shot his son, who was covered with a quilt. It is true Kitchens was there also, sleeping on the floor with the rest of the

family of Burgess, six or eight feet from defendant's wife—her father, mother and son being in the same room. After reviewing the evidence in this case, and the charge of the Court to the jury, our judgment is, that there is no error in the record which will authorize this Court to interfere and set aside their verdict.

Let the judgment of the Court below be affirmed.